

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

November 5, 1984

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

J01 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth. Suite B
McAllen. TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employe-

Mr. Sam Kelley
Commissioner
Office of Consumer Credit
 Commissioner
P. O. Box 2107
Austin, Texas    78768

Opinion No. JM-225

Re: What constitutes the separation and division of a pawn transaction within the meaning of article 5069-51.12, V.T.C.S.

Dear Mr. Kelley:

You have requested our opinion regarding the applicability of a portion of article 5069-51.12, V.T.C.S., to certain types of pawn transactions. The pertinent portion of the statute provides:

> No pawnbroker shall separate or divide a pawn transaction into two or more transactions for the purpose or with the effect of obtaining a total pawn service charge in excess of that authorized for an amount financed equal to the total of the amounts financed in the resulting transactions.

V.T.C.S. art. 5069-51.12.

While the statute prohibits charging more than one service charge for splitting transactions, it does not prohibit making two transactions as long as only one service charge is assessed. A dispute has arisen over the meaning of what is a division or separation of a pawn transaction and which transactions violate the statutory prohibition. The pawnbrokers association argues that "separation and division of a pawn transaction" occurs only when there is a separation or division of a single unit of collateral. For example, in its view, the pledge of a matched set of silverware or a rifle with attached telescopic sight would constitute a single transaction. The opposing viewpoint is that the statutory prohibition on division of collateral applies when several items are pawned at the same time. For example, the pledge of a watch and a ring when pawned at the same time could not be divided into two different transactions if service charges were assessed greater than the amount which might be charged if the watch and ring secured one transaction.

Article 5069-51.01, et seq., V.T.C.S., the Texas Pawnshop Act, was enacted in 1971 and continued a long history of governmental regulation of pawnbrokers. See Tex. Gen. Laws 1874, ch. CVII, §1, et seq., at 153, 8 H. Gammel, Laws of Texas 155 (1898); V.T.C.S. arts.

6146-6165 (1925); V.T.C.S. art. 6165b (1963); V.T.C.S. art. 5069-1.01, et seq. (1967). Few of the Texas Pawnshop Act's provisions are new. The part of article 5069-51.12 with which we are concerned had its roots in legislation passed in 1963 and 1967. In the first of these, the Texas Regulatory Loan Act, which was repealed in 1967, article 6165b, section 17(a)(7) provided in part:

> No licensee shall induce or permit any person, or husband and wife, to be obligated, directly or indirectly, under more than one (1) loan contract under this Act at the same time for the purpose, or with the effect, of obtaining a higher authorized charge than would otherwise be permitted by this Act. . . .

In 1967, legislation concerned with consumer credit included the following:

> No licensee shall induce or permit any person, or husband and wife, to be obligated, directly or indirectly, under more than one loan contract under this chapter at the same time for the purpose, or with the effect, of obtaining a higher authorized charge than would otherwise be permitted by this chapter; but such limitation shall not apply . . . to pledged loans made pursuant to Article 3.17. . . . (Emphasis added).

V.T.C.S. art. 5069-3.15.(7). Article 5069-3.17 specifically dealt with pawnbrokers.

Clearly, the legislature in 1963 sought to prevent lenders from dividing a loan transaction into two or more small loans so as to earn higher interest. Pawnbrokers were apparently included as "lenders." Although pawnbrokers were explicitly exempted from this prohibition in 1967, the legislature reinstated the limitation in slightly altered form with the passage of the Texas Pawnshop Act. The obvious purpose of this section of the Pawnshop Act and its predecessor statute was to prevent lenders from charging excessive fees by taking collateral and dividing it among two or more loans instead of securing one loan. With the passage of the 1971 Texas Pawnshop Act, this prohibition once again applies to pawnbrokers.

"Pawn transaction" is not defined in the Texas Pawnshop Act, but there is no prohibition against allowing more than one item of collateral to secure a loan, and article 5069-51.10 clearly indicates that "pawn transaction" can refer to a loan secured by more than one piece of collateral.

Art. 5069-51.10.   Pawn Ticket

The pawnbroker, at the time the pawn transaction is entered, shall deliver to the pledgor a memorandum or <u>ticket</u> on which shall be clearly set forth the following:

(a)  The name and address of the pawnshop;

(b)  The name and address of the pledgor and pledgor's description or the distinctive number from pledgor's driver's license or military identification;

(c)  The date of the transaction;

(d)  <u>An identification and description of the pledged goods, including serial numbers if reasonably available;</u>

(e)  The amount of cash advanced or credit extended to the pledgor, designated as the 'Amount Financed';

(f)  The amount of the pawn service charge, designated as the 'Finance Charge';

(g)  <u>The total amount (the Amount Financed plus the Finance Charge) which must be paid to redeem the pledged goods</u> on the maturity date, designated as the 'Total of Payments';

(h)  The 'Annual Percentage Rate,' computed in accordance with the regulations issued by the Federal Reserve Board of the United States pursuant to the Truth-in-Lending Act, Title I, Act of May 29, 1968, Public Law 90-321, 82 Stat. 146, as amended;

(i)  The maturity date of the pawn transaction;

(j)  <u>A statement to the effect that the pledgor is not obligated to redeem the pledged goods, and that the pledged goods may be forfeited to the pawnbroker sixty days after the specified maturity date.</u>   (Emphasis added).

The statutory requirement that a ticket be made up at the time the pawn transaction is entered into and that the ticket contain an identification and description of the pledged goods including serial numbers clearly implies more than one item of collateral can be used

to secure the transaction.  See also article 5069-51.11, which states that a pledgor shall have no obligation to redeem goods or make any payment on a pawn transaction.  Thus, the statutory prohibition on division of collateral applies when several separate and distinct items are pawned at the same time.

### S U M M A R Y

We conclude that article 5069-51.12, V.T.C.S., prohibits pawnbrokers from splitting pawn transactions for the purpose of charging a total service charge greater than the service charge on one transaction.  It does not prohibit splitting transactions if greater service charges are not assessed on more than one transaction than would be assessed on a single transaction.  A single pawn transaction may be secured by more than one item of collateral.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bradley Seals
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Bradley Seals
Nancy Sutton
Bruce Youngblood